UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

JACOB BAILEY AND
STEVEN BANASIAK
    On behalf of themselves
    and those similarly situated,

        Plaintiffs,

vs.                                                               Case No.

KELLER WILLIAMS REALTY INC.
a/k/a KELLER WILLIAMS REALTY INTERNATIONAL,
SAFE HARBOR REALTY OF PORT ST. LUCIE, LLC
d/b/a KELLER WILLIAMS REALTY OF PORT ST. LUCIE,
and
SAFE HARBOR REALTY OF MARTIN COUNTY, LLC
d/b/a KELLER WILLIAMS OF THE TREASURE COAST
        Defendants.
_____/

## COMPLAINT

Plaintiffs Jacob Bailey and Steven Banasiak on behalf of themselves and those similarly situated to them sue Defendants and states as follows:

## JURISDICTION

Jurisdiction in this Court is proper under 29 U.S.C. §1331 as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e and the Americans with Disabilities Act, 42 U.S.C. §12131.

1

## **VENUE**

Venue is proper in this Court as Defendant Safe Harbor Realty of Port St. Lucie d/b/a Keller Williams of Port St. Lucie (hereinafter Defendant Safe Harbor PSL) and Safe Harbor Realty of Martin County d/b/a Keller Williams of Martin County (hereinafter Defendant Safe Harbor Martin) are corporations conducting business within the Southern District and Defendant Keller Williams Realty, Inc. a/k/a Keller Williams Realty International (hereinafter Keller Williams International) is the national company that provided the franchise opportunity to Defendants Safe Harbor PSL and Safe Harbor Martin.

## **CONDITIONS PRECEDENT**

All conditions precedent to the filing of this suit have been met. Plaintiffs each filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory/retaliatory events. See Composite Exhibit A. Each Plaintiff received a Dismissal and Notice of Rights. Plaintiff Bailey's Notice was issued on June 16, 2022. Plaintiff Banasiak's Notice was issued on June 24, 2022, and both filed suit within 90 days of receipt. See Composite Exhibit B.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

1. Plaintiff Jacob Bailey was employed by Safe Harbor PSL beginning in January 2015.

2. Plaintiff Steven Banasiak was employed by Safe Harbor PSL from November 16, 2017, until March 3, 2020, when he was transferred to its sister company Safe Harbor Martin.

3. There were several Safe Harbor companies that were franchises of Defendant Keller Williams International and joint employers of Plaintiffs.

4. These companies shared common ownership, held joint company meetings, and occasionally had an employee in one office cover in another office. The companies were considered "sister companies."

5. Plaintiff Banasiak held trainings for agents from all five of the Safe Harbor brokerages.

6. Together, the sister companies have 15 or more employees and, therefore, are covered by Title VII of the Civil Rights Act.

7. In 2020, Seth Campbell who was a top Keller Williams franchisee was sued for sexual battery. After a several-month investigation into multiple allegations of sexual harassment, Defendant Keller Williams International removed Mr. Campbell.

8. In February 2021, the President of Defendant Keller Williams International, Josh Teams, announced that he would be resigning his position.

9. Just weeks later, Mr. Teams was arrested on the charge of indecent exposure, which was subsequently dismissed.

10. Nikki Ubaldini, who is the principal over 32 Keller Williams International offices, making her a regional owner with Keller Williams International, began Women Empowered (WE) for the stated purpose of helping women become empowered and to become their own advocates.

11. At a mandatory regional corporate meeting/training of Defendant Keller Williams International, Ms. Ubaldini announced the implementation of WE movement at Keller Williams International.

12. As franchises of Defendant Keller Williams International, Defendant Safe Harbor PSL and Defendant Safe Harbor Martin were required to implement the WE program.

13. In some franchises, such as Defendant Safe Harbor PSL and Safe Harbor Martin, instead of empowering women, WE was creating discrimination against men.

14. Specifically, Plaintiff Bailey, who had grown Defendant Safe Harbor PSL's business significantly over many years, was passed over for a promotion to General Manager.

15. The person selected as General Manager, Janelle Laurenzano, was someone who Plaintiff Bailey had hired and trained.

16. Once. Ms. Laurenzano was the General Manager, she instituted a new dress code policy that only applied to the male employees. One example is the requirement all facial hair being clean cut, which clearly only applies to men.

17. Additionally, Ms. Laurenzano made inappropriate comments, bragging to staff that at her previous job, she told male superiors she "had bigger balls than them."

18. Male employees were told that it was "girl power" time and men needed to take a step back.

## COUNT 1—GENDER DISCRIMINATION UNDER TITLE VII
**(Individual and Class Claim)**

Plaintiffs incorporate all prior paragraphs as if fully stated herein.

19. Plaintiff Bailey and Plaintiff Banasiak are both males.

20. Plaintiff Bailey was a successful agent at Defendant Safe Harbor PSL for five and a half years, during which time, he hired and trained agents.

21. Plaintiff Banasiak was a successful Broker and was considered one of the best technology trainers at Safe Harbor PSL.

22. In addition to Plaintiff Bailey being passed over for a position for which he was more qualified than the female who was promoted, the Plaintiffs suffered unequal treatment as the rules that were put into place were not applied equally to men and women.

23. Specifically, Plaintiff Bailey was told that if he ever missed a conference call or a regional meeting, he would be fired.

24. Plaintiff Bailey had recently become the sole care giver to his child, of which Ms. Laurenzano was made aware.

25. There were several times when female employees missed conference calls and regional meetings to care for their child/children and were not disciplined or terminated.

26. Since it was only a matter of time until Plaintiff Bailey and Plaintiff Banasiak were terminated, the were constructively discharged and submitted their resignations on August 17, 2020.

**WHEREFORE**, Plaintiffs demand damages for lost wages/back pay, benefits, front pay, emotional distress damages, punitive damage, and all other compensatory damages allowable under law, attorney's fees and costs and any other relief that the Court deems just and proper.

### COUNT 2--VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
**(Individual claim of Plaintiff Banasiak)**

Plaintiff incorporates all prior paragraphs as if fully stated herein.

27. In January 2020, Plaintiff Banasiak was sick with what he believed to be the flu and bronchitis.
28. During the last week of March 2020, Plaintiff Banasiak began suffering the same symptoms and was told he had flu and bronchitis.
29. His doctor instructed him to take a week off work to rest.
30. This was the same time period that COVID 19 was becoming a concern.
31. Even though he was authorized by his doctor to take a week off, Plaintiff Banasiak was required by Defendant Safe Harbor Martin to work from home, including attending corporate zoom meetings and conducting multiple Zoom trainings for agents from all five of the Safe Harbor brokerages.

32. Over the course of the week, Plaintiff Banasiak's condition worsened.

33. On March 27, 2020, Plaintiff Banasiak was rushed to the hospital with severe respiratory issues and cardiac symptoms.

34. During his hospital stay, Plaintiff Banasiak was diagnosed with congestive heart failure and was placed under around the clock cardiac care.

35. After five days, Plaintiff Banasiak was released to the care of his mother who had been a registered nurse for over 40 years.

36. As a condition of Plaintiff Banasiak's release, he was required to wear a heart monitor that had a portable defibrillator.

37. Plaintiff Banasiak was advised that he was at risk for a stroke or massive heart attack and, therefore, needed to keep his stress low.

38. Regardless, the day after Plaintiff Banasiak was released from the hospital, Charles Possess, the owner of the Safe Harbor franchises asked how soon he would be returning to the office.

39. Plaintiff Banasiak explained that, based on his congestive heart failure and the potential complications that could be caused by stress, he could not return to work at this time.

40. Mr. Possess pressured Plaintiff Banasiak until he agreed to try to work from home.

41. For the next two weeks, Plaintiff Banasiak was put under daily pressure to return to work.

42. Even though it was against the advice of his medical professionals, Plaintiff Banasiak returned to work approximately two weeks after he had been released from the hospital for fear of losing his job.

43. Defendant Safe Harbor Martin continued to fail to accommodate Plaintiff Banasiak's disability over the next several months.

44. In addition to the sex discrimination, the failure of his employer to make any accommodations for his disability, caused him to resign.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues.

Dated: September 14, 2022,  Respectfully submitted,

*/s/Beth Coke*
Beth Coke
Fla. Bar. #70726
Beth@cokeemploymentlaw.com
Coke Employment Law
131 N. 2nd Street, Suite 204
Fort Pierce, Fl. 34950
Telephone: (772) 252-4230
Facsimile: (772) 252-4575
Attorney for Plaintiffs